**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
Scott L. Fleischer
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com
sfleischer@barclaydamon.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11, Subchapter V |
| GETSWIFT, INC., | : | Case No. 22-11057 |
| Debtor. | : | |
| In re: | : | Chapter 11, Subchapter V |
| GETSWIFT TECHNOLOGIES LIMITED, | : | Case No. 22-11058 |
| Debtor. | : | |

**MOTION TO ALLOW DEBTORS TO MAINTAIN**
**EXISTING CASH MANAGEMENT SYSTEMS**

GetSwift, Inc. ("GSI") and GetSwift Technologies Limited ("GTL"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby move the Court (the "Motion") for an interim and final order pursuant to Sections 105(a) and 363(c) of Title 11 of the United States Code (the "Bankruptcy Code") authorizing them to continue to use their existing cash management system and maintain existing bank accounts with Capital One, First Republic Bank, and Mirabank (Serbia) (collectively the "Banks") and their business forms.  In addition, the Debtors request that the Bankruptcy Court schedule a final hearing within approximately

twenty-five (25) days of the commencement of these Chapter 11 Cases to consider approval of this Motion on a final basis. In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION, VENUE AND BASIS FOR RELIEF

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a), 363, 1107, and 1108 of the Bankruptcy Code.

### BACKGROUND

**A.    The Chapter 11 Cases**

3. On August 1, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for the appointment of a trustee or an examiner has been made in the Chapter 11 Cases and no statutory committees have been appointed or designated.

5. A description of the Debtors' business operations, corporate structure, pre-petition funding, reasons for commencing these Chapter 11 Cases, and the relief sought from this Court pursuant to the Motion is also set forth in the *Declaration of Joel MacDonald Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration").

**B.      The Debtors' Organizational Structure**

6.      GetSwift Technologies Limited ("GTL") is the ultimate parent of GetSwift Inc. ("GSI"), a delivery and workforce management software-as-service (SaaS) platform that has been utilized by clients in over 70 countries and across more than 70 different verticals to automate and manage their local delivery operations and delivery drivers. The company offers a suite of software, products, and services and focuses on business and logistics automation, and further includes ecommerce and marketplace ordering, workforce management, data analytics and augmentation, business intelligence, route optimization, cash management, task management, shift management, asset tracking, real-time alerts, cloud communications, among others.

7.      GTL was incorporated under the Business Corporations Act (British Columbia) on May 19, 2020.

8.      GTL is a holding company for its operating subsidiaries and has no meaningful operations. Its principal asset is its listing as a publicly-traded entity in Canada.

9.      GTL's registered address is 250 Howe Street, 20th Floor, Vancouver, BC V6C 3R8 Canada. Neither of the Debtors own, lease or hold under other arrangement, real estate from which the Debtors operates their businesses.

10.     GTL directly and wholly owns GetSwift Limited ("GSL"), a non-debtor Australian company incorporated under the Australian Corporations Act. GTL, which was a public company trading in Australia until early 2021 before it re-domiciled to the NEO Exchange in Canada via a scheme of arrangement, is the 100% owner of GSI, a domestic corporation incorporated under the laws of the State of Delaware with a registered address of 1185 Avenue of the Americas, 3rd Floor, New York, New York 10036.

11. GTL is a publicly-traded company on the NEO Exchange, trading under the symbol "GSW." GTL trades on the OTC Pink Sheets under the symbol "GTSWF."

**C.     The Debtors' Business**

12. GSI serves both "pay-as-you-go" and subscription customers, which consist of small and medium-sized businesses, and "enterprise" customers, which are larger organizations with specific, customized needs over multiple sites.

13. GSI owns and operates the Delivery Biz Pro ("DBP") and Scheduling Plus ("SP") platforms, along with the getwsift.com platform that it created and developed.

14. The DBP Platform offers a subscription-based cloud service for business with scheduled, recurring product orders such as produce, meal-kit, farm-to-table, water and other home and commercial deliveries. The DBP Platform provides delivery providers with software tools to fulfill their customers recurring delivery needs.

15. The DBP Platform combines business-critical daily functions such as an advanced customer marketplace, intelligent route assignment, customer management, billing, inventory, packing, routing, communications, reporting, procurement, and mobile friendliness.

16. The SP Platform combines staff scheduling, task management, time and attendance, recordkeeping, and payroll into a single subscription-based cloud solution, which allows business of all sizes to reduce time spent on employee management and optimize their capital.

17. The GetSwift platform offers a subscription-based cloud service for business with on-demand orders in industries such as food, retail, and florist. The DBP Platform provides delivery providers with software tools to fulfill their customers on-demand delivery needs.

18. GSI also operates software development centers around the globe, including one in Belgrade, Serbia.

19. The authorized capital of GTL consists of an unlimited number of authorized Common Shares, of which 30,764,181 are currently issued and outstanding.

**D.  Debtors' Banking Relationships**

20. The Debtors have banking relationships with Capital One (DBP revenue, international FX wires, and payroll), First Republic Bank (primary operating account, GetSwift revenue, automated payment of SaaS Paas vendors), and Mirabank (Serbia) (legal funds and European wires).

21. The Debtors receive advance deposits from customers for their purchases, which deposits are routed to the operating account. These purchases represent the significant majority of the Debtors' revenue. If the stream of deposits were interrupted for even a short period, the Debtors' operations would be severely impacted and its ability to adequately deliver its products would be compromised.

22. Also, the Debtors employ a work force of approximately 50 workers, which includes employees and independent contractors. The workers receive their pay through direct deposit of their wages from the Debtors' Capital One accounts into their bank accounts. Instead of managing the Debtors' payroll internally, the Debtors uses ADP, a third party payroll administrator.

23. Finally, the Debtors' accounts receivables are paid into the First Republic Bank accounts. Were the Debtors required to close their existing accounts an open new accounts, their ability to receive revenue and pay its vendors would be significantly interrupted.

**RELIEF REQUESTED**

24. By this Motion, the Debtors are requesting authorization continue to use their prepetition bank accounts (the "Prepetition Accounts") and cash management system. The use

of the Prepetition Accounts is necessary in these cases to ensure that the Debtors continue to be able to collect their receivables, allow customers to make their purchase deposits, and for the Debtors to pay their various vendors. The use of the Prepetition Accounts is also necessary to enable the Debtors to continue to paying their employees through direct deposit and to avoid the costs and disruption of changing their Prepetition Accounts.

## THE PREPETITION ACCOUNTS

25. The Debtors currently maintain four (4) bank accounts with Capital One, three (3) bank accounts with First Republic Bank, and one (1) bank account with Mirabank in Serbia. A complete list of the all of the Debtors' Prepetition Accounts in redacted form is annexed hereto as **Exhibit A**.

26. The Debtors use the First Republic Bank account ending in x2194 as their primary operating account (the "Operating Account"). The Debtors use the Operating Account to pay all vendors, including Saas Paas vendors, and collect revenue.

27. The Debtors use the Capital One account ending in x3917 as their payroll account (the "Payroll Account") as well as to collect revenue and issue international FX wires. Shortly before each payday, the Debtors transfer an amount equal to their employee payroll for the upcoming pay period from the Operating Account into the Payroll Account for their employees. Amounts due to the Debtors' independent contracts are paid from the Operating Account. On each payday, ADP automatically pays employees by direct deposit through bank to bank transfers from the Payroll Account to the particular employee's bank account. The bank account and payroll information for each employee registered for direct deposit has been given to Capital One so that the direct deposit transfers to each registered employee can be completed.

28. The Debtors hold funds in Mirabank (Serbia) account ending in x7558 for wires of their legal fees and to send wires in Euros. Although the Mirabank (Serbia) account is not used routinely in the Debtors' day to day business, the account is important to the Debtors to allow them to pay vendors who require payment in Euros rather than US dollars.

29. None of the accounts will ever contain more than $250,000 during the bankruptcy. Upon information and belief, First Republic Bank is on the United States Trustee's list of approved depositories but Capital One and Mirabank (Serbia) are not.

### NEED FOR RELIEF

30. Without the relief requested in this Motion, the Debtors will be required to open new, separate accounts as a debtors-in-possession and close their Prepetition Accounts, which is currently the only means by which the Debtors receive payments and customer purchase deposits. The Debtors do not believe that changing their bank account designations with its customers can be fully completed and processed without significant delay.

31. Further, the Debtors have already submitted the bank account information for each of their employees that receive direct deposit of their wages to Capital One. Requiring all of this information to be gathered and resubmitted to another bank would be a distraction for the Debtors' management.

32. As a practical matter, such distractions would be unduly disruptive during this critical period for the Debtors and their creditors as the Debtors attempt to liquidate their assets to maximize creditor recoveries. Accordingly, the Debtors request authority to continue to use the Prepetition Accounts.

33. The Debtors will continue to maintain records respecting all transfers between and among the Prepetition Accounts so that all transactions can be ascertained after they have

occurred. In addition, the Debtors will instruct their banks to add the designation "Debtor-in-Possession" or "DIP" to each of the Prepetition Accounts. The Debtors will also maintain records that recognize the distinction between prepetition and postpetition transfers and instruct each bank to dishonor any checks issued before the Petition Date absent a prior order of the Court.

34. In addition, to minimize expenses, the Debtors further request that they be authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, and other business forms (collectively, the "Business Forms"), substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors-in-possession, *provided*, *however*, that the Debtors shall print "Debtor in Possession" or "DIP" and the respective Chapter 11 case number on any new check stock.

## BASIS FOR REQUESTED RELIEF

35. The Office of the United States Trustee (the "U.S. Trustee") has established certain operating guidelines for debtors-in-possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payments of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession accounts that bear the designation "Debtor in Possession," the bankruptcy case number and the type of accounts. Similarly, Section 345 of the Bankruptcy Code, among other requirements, provides that debtors in possession must require

their depository banks to post bonds sufficient to insure all debtor deposits not insured by the Federal Deposit Insurance Corporation.

36.    Enforcing these requirements in these cases, however, would place a burden on the Debtors. As explained in detail above, the Debtors' accounts are set up for specific purposes to ensure the smooth collection of receivables and payment of employees, vendors, and other costs. Accordingly, the Debtors seek authority under Section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash in the Prepetition Accounts described above.

37.    Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing or modified cash management systems, treating a request for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr S.D. Ohio 1987). Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of Section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See, e.g., Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 384 (2d Cir. 1997); *In re Enron Corp.,* Case No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.),* 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of Section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.),* 75 F.3d 1447, 1453 (10th Cir. 1996).

38. The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Prepetition Accounts without interruption is vital to the efficient and economic administration of the Debtor's estate. Therefore, it is within the Court's equitable power under Section 105(a) to approve the continued use of the Prepetition Accounts.

39. These procedures are similar to those employed by comparable corporate enterprises and the relief requested herein is similar to relief granted in other Chapter 11 cases in this and other districts.[1] *See, e.g., In re The New York Bakery of Syracuse, Inc.* Case No. 21-30770 (DD) (N.D.N.Y. 2021); *In re Auburn Armature, Inc. et al.* Case No. 17-30743 (MCR) (N.D.N.Y. 2017); *Native Wholesale Supply Company,* Case No. 11-14009 (CLB) (W.D.N.Y. 2011); *In re Performance Transportation Company*, Case No. 07-04746 (MJK) (W.D.N.Y. 2007); *In re Bush Industries, Inc.,* Case No. 04-12295 (CLB) (W.D.N.Y. 2004); *In re Northeast Biofuels, LP,* Case No. 09-30057 (MCR) (Bankr. N.D.N.Y 2009); *In re Mohawk Valley Nursing Home, Inc.,* Case No. 08-60303 (Bankr. N.D.N.Y. 2008); *In re Auburn Memorial Hospital*, Case No. 07-31126 (MCR) (Bankr. N.D.N.Y. 2007); *In re Silicon Graphics, Inc., et al.,* Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. 2006); *In re Atkins Nutritionals, Inc., et al.,* Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. 2005); *In re Footstar, Inc. et al.,* Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. 2004); *In re Loral Space & Communications Ltd., et al.,* Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. 2003); *In re TL Admin. Corp. (f/k/a Twinlab Corporation), et al.,* Case No. 03-15564 (CB) (Bankr. S.D.N.Y. 2003); *In re Acterna Corporation, et al.,* Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. 2003); *In re Aerovias Nacionales de Colombia S.A. Avianca (In re*

---

[1] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion. Copies of these orders are available upon request.

*Avianca, Inc.),* Case Nos. 03-11678 and 03-11679 (ALG) (Bankr. S.D.N.Y. 2003); *In re WorldCom, Inc., et al.,* Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. 2002).

40. Accordingly, in order to avoid delays in payments to administrative creditors and ensure as smooth a transition to Chapter 11 as possible with minimal disruption, it is important that the Debtors be permitted to continue to maintain their existing Prepetition Accounts.

41. In sum, the Debtors request that their existing Prepetition Accounts be deemed debtor-in-possession accounts and that their maintenance and continued use, in the same manner as with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

## NOTICE

42. Notice of this Motion will be given to (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) counsel to the proposed post-petition lender; (iv) counsel for the proposed buyer; (v) the Internal Revenue Service; (vi) the top 20 unsecured creditors of each Debtor; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (viii) the banks set forth on the attached Exhibit A. In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

43. No previous application for the relief sought in this Motion has been made to this Court.

WHEREFORE, the Debtors respectfully request that this Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, authorizing the Debtors to continue to use the Prepetition Accounts and for such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 2, 2022

                    **BARCLAY DAMON LLP**

                    By*:   /s/Janice B. Grubin*
                    Janice B. Grubin
                    Ilan Markus
                    Scott L. Fleischer
                    1270 Avenue of the Americans, Suite 501
                    New York, New York 10020
                    Telephone:  (212) 784-5800
                    jgrubin@barclaydamon.com
                    imarkus@barclaydamon.com
                    sfleischer@barclaydamon.com

                    *Proposed Counsel to Debtors and Debtors-in-Possession*